ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE PONCE<br><br>APELANTE<br><br>V.<br><br>OMAYRA CÓLON PÉREZ<br><br>APELADA | TA2026AP00030 | Apelación procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso Núm. P02023CV01934<br><br>Sobre:<br>Cobro de Dinero Ordinario |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos, el Municipio Autónomo de Ponce (en adelante, "Municipio de Ponce"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la *"Sentencia"* emitida el 16 de octubre de 2025 y notificada el 21 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante esta, el foro primario declaró *No Ha lugar* la *"Demanda,"* presentada por el Municipio de Ponce bajo el fundamento de que las cuantías solicitadas no son liquidas ni exigibles. A su vez, dicho foro desestimó con perjuicio la acción instada. Todo, dentro de un pleito ordinario sobre cobro de dinero, entablado por el referido Municipio en contra de la señora Omayra Colón Perez (en lo sucesivo, "la apelada").

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

**I.**

El 5 de julio de 2023, el Municipio de Ponce instó una *"Demanda"* sobre cobro de dinero en contra de la apelada. Indicó, que la apelada fue empleada del Municipio y que en enero de 2021 recibió un pago en

exceso a los dineros que le correspondían en concepto de retribución por excedente de vacaciones. Sostuvo, que el pago indebido fue por la cantidad de $11,258.55. Añadió, que ha realizado gestiones encaminadas a que la apelada devuelva lo pagado en exceso. Sin embargo, dichas gestiones han resultado infructuosas. Ante tales hechos, peticionó que la apelada retorne lo pagado indebidamente, a tenor del procedimiento establecido en la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60.

En respuesta, el 14 de agosto de 2023, la apelada presentó alegación responsiva. Mediante esta, admitió que fue empleada del referido Municipio y negó el resto de las alegaciones contenidas en la *"Demanda."* Aseveró en la afirmativa, que el Municipio de Ponce nunca le envió un "desglose certero y fehaciente que acredite el alegado desembolso indebido que se hizo al momento de liquidar sus haberes."

Surge de la *"Minuta"* notificada el 17 de agosto de 2023, que el foro primario convirtió el procedimiento de Regla 60, *supra* a uno de pleito de cobro de dinero ordinario.

Tras varias incidencias procesales que no son necesarias de pormenorizar, el 2 de diciembre de 2024, las partes presentaron el "*Informe Preliminar sobre Conferencia con Antelación al Juicio"* enmendado. Mediante este, estipularon los siguientes hechos:

1. El Municipio es una entidad jurídica con capacidad legal para contratar, demandar, y ser demandada conforme a los dispuesto en el Código Municipal de Puerto Rico, con dirección física en la Casa Alcaldía, Calle Villa final, frente a la Plaza Las Delicias y Degetau y dirección postal en Apartado 331709, Ponce PR 00733. Su número de teléfono es el 787-284-4141.

2. La parte Demandada se compone de la Sra. Omayra Colón Pérez ("señora Pérez" o "Demandada"), quien es mayor de edad, soltera, con capacidad legal para contratar, demandar y ser demandada, con dirección postal de HC 09 Box 3030, Ponce, PR 00730 y dirección física en Bo. Monte Llanos, Carr. 505 km 10.9, Ponce PR.

3. La Sra. Omayra Colón Pérez trabajó para el Municipio Autónomo de Ponce desde el 16 de junio de 2010 hasta el 31 de diciembre del año 2020.

4. El 26 de octubre de 2020, la Sra. Omayra Colón Pérez presento a la Alcaldesa, Hon. María E. Meléndez Altieri una carta de renuncia al puesto de Directora de Servicios al Ciudadano efectivo al 31 de diciembre de 2020.

5. El 7 de diciembre de 2020, la Alcaldesa, Hon. María E. Meléndez Altieri emitió una carta a la Sra. Omayra Colón Pérez en la cual aceptó la renuncia.

6. En 9 de enero de 2021, la Sra. Omayra Colón Pérez recibió un pago del Municipio Autónomo de Ponce por concepto de liquidación de licencias por vacaciones y enfermedad y exceso de vacaciones acumulados como empleada del Municipio.

7. El 3 de diciembre de 2021, la Sra. Omayra Colón Pérez recibió la carta certificada número 7009 1680 0001 0502 5165 del Municipio Autónomo de Ponce la cual acompaño la factura número 00000158 de 3 de diciembre de 2021 exigiendo la devolución del pago por liquidación de exceso vacaciones pagadas a la Sra. Omayra Colón Pérez que no le correspondía.

8. La factura número 00000158 de 3 de diciembre de 2021 remitida a la Sra. Omayra Colón Pérez por el Municipio Autónomo de Ponce es por concepto de reembolsar al Municipio el exceso de vacaciones pagado a la Sra. Omayra Colón Pérez que no le correspondía en la liquidación realizada el 9 de enero de 2021.

9. La Sra. Omayra Colón Pérez no pagó la cantidad de $10,254.11 después de haber recibido la factura número 00000158 de 3 de diciembre de 2021, la carta del 3 de diciembre de 2021 y el segundo aviso exigiendo el pago.

Así las cosas, el 3 de diciembre de 2024, el foro primario celebró la Conferencia con Antelación a Juicio de este caso.[1] Posteriormente, el 8 de julio de 2025, el referido foro celebró el juicio.[2] En la misma fecha, el tribunal de instancia les concedió a las partes la oportunidad de presentar memorandos de derecho, de conformidad a lo peticionado por éstas.

Así pues, el 8 de agosto de 2025, el Municipio de Ponce presentó *"Memorando de Derecho de la Parte Demandante."* Acto seguido, el 10 de agosto de 2025, la apelada hizo lo propio mediante la presentación de su *"Memorando de Derecho."*

Sometido el caso, el 21 de octubre de 2025, el foro primario notificó la *"Sentencia"* que hoy nos ocupa. Mediante esta, declaró *No Ha lugar* la *"Demanda"* presentada por el Municipio de Ponce, bajo el fundamento de que las cuantías solicitadas no son liquidas ni exigibles. A su vez, dicho foro desestimó con perjuicio la acción instada.

El foro apelado hizo formar parte de la *"Sentencia"* las siguientes determinaciones de hechos:

---

[1] Véase, *"Minuta"* notificada el 6 de diciembre de 2024. Entrada Núm. 80 de SUMAC del TPI.

[2] Véase, *"Minuta,"* notificada el 10 de julio de 2025. Entrada Núm. 108 de SUMAC del TPI.

1. Mediante estipulación quedó demostrado que la señora Colón Pérez trabajó para el Municipio Autónomo de Ponce desde el 16 de junio de 2010 hasta el 31 de diciembre de 2020.

2. El 26 de octubre de 2020, la señora Colón Pérez presentó a la Alcaldesa, Hon. María E. Meléndez Altieri una carta de renuncia al puesto de Directora de Servicios al Ciudadano efectivo al 31 de diciembre de 2020.

3. El 7 de diciembre de 2020, la Alcaldesa, Hon. María E. Meléndez Altieri emitió una carta a la señora Colón Pérez en la cual aceptó la renuncia.

4. El 9 de enero de 2021, la señora Colón Pérez recibió un pago del Municipio Autónomo de Ponce por concepto de liquidación de licencias por vacaciones y enfermedad y exceso de vacaciones acumulados como empleada del Municipio.

5. La parte demandante comenzó el desfile de prueba con el señor Rafael E. Colon, quien declaró que comenzó a trabajar en el Municipio para el 2020, que actualmente es secretario de la Legislatura Municipal, desde enero de 2021 al presente.

6. Declaró que es custodio de los archivos de la Legislatura, y describió sus funciones, que se le solicitó certificación sobre si la señora Yolanda Cruz había sido alcaldesa y que luego de hacer una búsqueda no encontró documento alguno que acreditara que Yolanda Cruz Medina había sido alcaldesa interina en el periodo del 21 de diciembre de 2020 al 10 de enero de 2021.

7. Al momento de ser contrainterrogado indicó que cuando había cambios de personal se podía borrar los correos o archivos electrónicos.

8. La segunda testigo, la señora Lolita Vargas de León, se le preguntó sobre su preparación académica y declaró que fue auditora interna, que conoce a Omayra Colón y que hizo una auditoría que provocó una investigación, que el nombre de Omayra Colón era parte de la auditoria.

9. El anterior Alcalde Irizarry Pabón le ordenó una investigación por un asunto de nóminas. Surgió de la investigación que se procesaron nóminas especiales y se liquidaron balances, se hizo corrida de liquidación de licencias, que las personas que participaron no trabajaban en nómina, se investigaba una nómina especial del 9 de enero de 2021.

10. A preguntas de la parte demandada, la señora Vargas no supo indicar cuántos días se le pagaron en exceso a la demandada, que lo indicó fue que se pagó sobre $11,000.00.

11. El señor Juan Vargas Esbri indicó que era auditor en el Municipio desde hace 23 años, que fue Auditor III del 2006 al 2024, hace auditorias en áreas donde se manejan fondos públicos. Conoce a Omayra porque era director de servicios al ciudadano. Participó en la auditoria que se le hizo a 18 empleados, relacionado a sus liquidaciones del 9 de enero de 2021.

12. El Sr. Vargas Esbri indicó que se pagó exceso de vacaciones y enfermedad de varios años, se pagó el exceso de 60 días de vacaciones y 90 días de enfermedad. Para la evaluación se solicitó el Manual de Procedimiento de Recursos Humanos y había una fórmula que se usó mal, los hallazgos se plasmaron en una hoja de trabajo.

13. El Sr. Vargas Esbri usó el expediente de la demandada el cual contenía su carta de renuncia, la carta de aceptación de la misma de la alcaldesa, y todas las certificaciones negativas, hoja de pagos especiales y la autorización de finanzas de los pagos tanto d[e] ellos 60 días de vacaciones y 90 días de enfermedad, como pagos de excesos. Declaró que se le realizó un pago por concepto de exceso de días de vacaciones a la demandada por la suma de $13,618.13 y que según él dicho pago fue contrario a la ley.

14. Durante el contrainterrogatorio, el señor Vargas Esbrí no supo especificar cuántos días en exceso se pagaron, ni cómo se llegó a la cantidad de dinero pagada.

15. La señora María Vázquez Flores declaró que era Oficial Ejecutivo I, desde 1993, que para el 2021, era asistente administrativo, era custodia de documentos y conoció a la Sra. Omayra Colón Pérez cuando trabajaba como Directora de Servicios al Ciudadano, que la señora Lolita Vargas le requirió información y certificación del caso. En el expediente no había justificación para que la demandada no tomara o que impidiera que tomara sus días de vacaciones en exceso.

16. La señora Edna Cartagena Fuentes declaró que está en una licencia sin sueldo, para enero de 2021, que trabajaba como Grant Specialist de Cor 3 y como Auditora 4, preparaba las auditorias, conoce a Omayra. Se hizo una auditoria que reveló que se hizo un pago por vacaciones en exceso. Declaró que cuando un empleado se desvincula tiene derecho a que se le pague todo lo acumulado, que se acumula 60 días vacaciones y 90 días por enfermedad y todos aquellos excesos que estuvieran autorizados por el municipio. Reconoció que en efecto la señora Yolanda Cruz fue alcaldesa interina.

17. La Sra. Cartagena Fuentes declaró que evaluó el caso y había un desface en la liquidación, declaró además que, con relación a la demandada hubo 2 hallazgos. Explicó que en el hallazgo 2 se reflejó que hubo un pago a 18 personas, incluyendo a la demandada, de licencias por vacaciones acumuladas en exceso que no correspondía y que en el hallazgo 3 se encontró que se pagó de manera incorrecta de la liquidación regular a la Sra. Omayra Colón Pérez. Expuso que lo que se hizo fue que se le restó la cantidad que se había computado de menos, se le descontó y quedó en un balance menor al cómputo inicial.

18. Se le preguntó sobre la Ordenanza número 5, establecía que los balances en exceso no se pagaban si tenías balance en el 2018, al 2019 se perdía, al final del año natural, sin embargo, luego se enmendó con la Ordenanza 172020-2021 que autorizaba los pagos, pero la testigo declaró en el contrainterrogatorio que desconocía el contenido de dichas ordenanza[s].

19. La testigo tampoco supo indicar los días reclamados en exceso y cómo se llegó a la cantidad reclamada.

20. La señora Frances Reyes Vargas declaró que era asistente V en la Oficina de Recursos Humanos, lleva de Asistente V desde el 2010, su función era encargada de nómina de la Oficina de Recursos Humanos, que entre otras funciones está el verificar y certificar los pagos, ya sean semanales, quincenales, mensuales y pagos especiales ya sea de horas extras, liquidaciones y en exceso de vacaciones entre otros.

21. Explicó cómo se acumulan los días por enfermedad y vacaciones por mes de servicio un empleado acumula dos días y medio y uno y medio de enfermedad. Declaró que si llega a junio

30 o no los utilizó completos o no los pudo utilizar, hay dos vías, la ley permite que si la crisis económica está bien, con una autorización de la autoridad nominadora se pagan los excesos y de no ocurrir la autorización, se quedan sin exceso. Indicó además que, en este caso se pidió la reglamentación, los procesos, el manual, el expediente de personal y se hizo el pago, declaró también que en los pagos que había realizado a los empleados el 9 de enero de 2021, había diferencias, por lo que se emitieron pagos que no habían sido documentados para poder realizarlos.

22. La testigo expresó que desconocía cuantos días se le pagó en exceso.

23. Dentro de los documentos que entregó la señora Colón Pérez y que obran en los récords del Municipio para el procedimiento para el pago de liquidación de balances acumulados en exceso no se sometió ningún documento donde se evidencia las circunstancias extraordinarias que impidieran a la parte demandada agotar su licencia de vacaciones. A tenor con el Exhibit Núm. 2 de la parte demandante, el 20 de julio de 2021, el Municipio Autónomo de Ponce, Oficina de Auditoría Interna, emitió el Informe OAI-21-02 Liquidación Vacaciones Regulares y Enfermedad ("Informe OAI-21-02").

24. El informe se suscribió a raíz de una auditoría realizada por el Municipio Autónomo de Ponce para, entre otras cosas, determinar si la emisión de los desembolsos de las liquidaciones de vacaciones y enfermedad efectuadas el 9 de enero de 2021 a 17 ex funcionarios del municipio y una empleada transitoria se hicieron de acuerdo con la ley y la reglamentación aplicable.

25. El Informe OAI-21-02 en su hallazgo 2, apartado (a) determinó que luego de un examen realizado sobre el pago del 9 de enero de 2021, el Municipio de Ponce emitió desembolsos de $67,396.78 a funcionarios públicos por exceso de licencia de vacaciones acumuladas sin haber documentado la necesidad del servicio. Esto, utilizando como base legal el Artículo 2.058 del Código Municipal, supra.

26. Dentro de los funcionarios públicos a quien se emitió el desembolso por exceso de licencia de vacaciones acumuladas sin haber documentado la necesidad del servicio se encuentra la Directora de Servicio al Ciudadano, Sra. Omayra Colón Pérez.

27. A su vez, en apoyo a su hallazgo, se examinó la certificación emitida el 9 de marzo de 2021 por la Oficina de Recursos Humanos del Municipio Autónomo de Ponce, donde se establece que no consta evidencia en los expedientes de personal de la Oficina de Recursos Humanos de la necesidad de servicio para el pago del exceso de balance acumulado por licencia de vacaciones. Esta certificación se admitió como el Exhibit Núm. 2 de la parte demandante.

28. El Informe OAI-21-02, en su hallazgo 3, expuso que, con relación al pago de liquidación realizado el 9 de enero de 2021, no se utilizaron correctamente las bases correspondientes para calcular la liquidación de las licencias acumuladas en exceso, ocasionando que el cómputo del importe a liquidarse en 16 de los 18 empleados se efectuara incorrectamente.[3]

---

[3] El 20 de diciembre de 2023 la a Oficina del Contralor de Puerto Rico publicó el Informe de Auditoría OC-24-27 del Municipio de Ponce. El citado Informe del Contralor no levanta señalamientos sobre la liquidación por vacaciones y enfermedad de empleados municipales.https://www.ocpr.gov.pr/informes-de-auditoria-2023-2024/informe-deauditoria-oc-24-27-del-municipio-de-ponce/

29. El Tribunal toma conocimiento judicial de las siguientes emergencias en Puerto Rico:

a. Los días 19 y 20 de septiembre de 2017, el huracán María hizo su paso por Puerto Rico, convirtiéndose en el fenómeno atmosférico más devastador en los pasados ochenta (80) años, tanto para la infraestructura local como para el suministro de servicios esenciales a la ciudadanía. El huracán María impactó a Puerto Rico tan sólo dos semanas después de que el huracán Irma azotara la isla. El entonces Gobernador Ricardo Rosselló declaró la isla bajo estado de emergencia y zona de desastre. Véase Ordenes Ejecutivas 2017-045 hasta 2017 065, Orden Ejecutiva 2017-069.

b. La Gobernadora de Puerto Rico, Hon. Wanda Vázquez Garced, promulgó el 7 de enero de 2020 la Orden Ejecutiva 2020-01 a los fines de declarar un Estado de Emergencia a consecuencia de la actividad sísmica de 6.4 de magnitud experimentada en la zona sur de Puerto Rico. Se expone en la citada Orden que la magnitud de los daños sufridos y las continuas réplicas del terremoto ocurrido amenazan con ocasionar aún más daños y han creado una situación de emergencia que atenta contra la seguridad pública, los servicios básicos a la ciudadanía, la actividad económica y el bienestar social de Puerto Rico. Por lo cual, se declara un estado de emergencia para atender toda amenaza a la vida y, los daños causados a la infraestructura y propiedad.

c. La Gobernadora de Puerto Rico, Hon. Wanda Vázquez Garced, promulgó una segunda Orden Ejecutiva 2020-02 el día de hoy para ordenar la utilización de personal y equipo de la Guardia Nacional de Puerto Rico en apoyo al Negociado para Manejo de Emergencias y Administración de Desastres, y a los municipios afectados a consecuencia de la actividad sísmica experimentada

d. El 11 de enero de 2020 la Gobernadora entonces aprobó las siguientes Ordenes Ejecutivas de Emergencia:

i.   OE-2020-003 – Orden Ejecutiva de la Gobernadora de Puerto Rico, Hon. Wanda Vázquez Garced, para que los médicos u osteópatas, médicos asistentes y profesionales de la salud de otras jurisdicciones de los Estados Unidos de América puedan ejercer la medicina y servicios de salud en Puerto Rico y para otorgar la inmunidad del estado a los médicos u osteópatas, médicos asistentes y profesionales de la salud voluntarios de Puerto Rico y de otras jurisdicciones.

ii. OE-2020-004 – Orden Ejecutiva de la Gobernadora de Puerto Rico, Honorable Wanda Vázquez Garced, para establecer un Cuerpo de Oficiales de Paz que asista a las Fuerzas de Orden Público Estatales y derogar el Boletín Administrativo OE 2017-052.

iii. OE-2020-006 – Orden Ejecutiva de la Gobernadora de Puerto Rico, Hon. Wanda Vázquez Garced, activando las disposiciones de la Ley 76-2000, según enmendada, para el restablecimiento de los servicios de telecomunicaciones y data en Puerto Rico, y autorizar a todas las agencias federales concernidas, particularmente, (FEMA) a utilizar los medios que razonablemente, estimen necesarios para acceder a todas las Torres de Telecomunicaciones, facilidades dedicadas e infraestructura relacionada, ubicada en Propiedad Privada.

iv. OE-2020-007 – Orden Ejecutiva de la Gobernadora de Puerto Rico, Hon. Wanda Vázquez Garced, autorizando la asignación de 12 millones de dólares provenientes del Fondo de Emergencia con una distribución de 2 millones para los municipios de Guánica, Guayanilla, Peñuelas, Ponce, Utuado y Yauco.

e. A tenor con el estado de emergencia a nivel mundial, el Gobierno de Puerto Rico emitió varias órdenes ejecutivas con el propósito de implementar medidas restrictivas para controlar los contagios de COVID 19 en la Isla. El 12 de marzo de 2020 el Gobierno de Puerto Rico promulgó el Boletín Administrativo Núm. OE-2020-020 mediante el cual se declaró un estado de emergencia "con el fin de implementar todas las medidas necesarias para salvaguardar la salud, bienestar y seguridad de todos en Puerto Rico ante la inminente amenaza del COVID-19".

f. Ante las emergencias continuas del año 2020, el Gobierno de Puerto Rico aprobó una serie de Ordenes Ejecutivas a los fines de adoptar medidas para trabajar la Pandemia del COVID-19. Ordenes Ejecutivas como la OE-2020-054 del 16 de julio de 2020 contenían disposiciones para asegurar que el Gobierno continuara ofreciendo servicios.

En desacuerdo, oportunamente el 5 de noviembre de 2025, el Municipio de Ponce presentó *"Moción de Reconsideración y Determinaciones de Hechos Adicionales."* El 10 del mismo mes y año, el foro primario declaró *No Ha Lugar* el petitorio presentado.

Aun en desacuerdo, el 9 de enero de 2026, el Municipio de Ponce presentó ante este Tribunal un recurso de Apelación. Mediante este, señaló los siguientes errores:

Erró el Tribunal de Primera Instancia al no emitir determinaciones de hechos adicionales sustentadas con la prueba estipulada por las partes, así como la documental y testifical vertida en el juicio.

Erró el Tribunal de Primera Instancia al no aplicar la presunción dispuesta en la regla 304 (5) de evidencia de Puerto Rico [.]

Erró el Tribunal de Primera Instancia al tomar conocimiento judicial, motu proprio, de hechos impertinentes al presente caso y sin haberle dado la oportunidad a las partes de oponerse, previo haberlos utilizados en su dictamen judicial.

Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la demanda incoada por la parte apelante cuando la evidencia testifical y documental admitida en evidencia y la ausencia de prueba por la parte apelada demuestran la procedencia de la causa de acción en cobro de dinero por el pago indebido realizado a la Sra. Omayra Colón Pérez.

Erró el Tribunal de Primera Instancia al concluir que la Sra. Yolanda Cruz Medina fue designada como alcaldesa interina en el periodo del 21 de diciembre de 2020 al 10 de enero de 2021 sin haberse presentado evidencia que lo establezca.

El 21 de enero de 2026, este Tribunal notificó una *"Resolución,"* mediante la cual ordenamos la presentación de la transcripción de la

prueba oral de la vista en su fondo. A su vez, concedimos una serie de términos para la presentación de objeciones a la referida transcripción; para la radicación del alegato suplementario; y para la presentación del alegato en oposición de la apelada.

Así las cosas, el 16 de marzo de 2026, la apelada notificó su estipulación de la transcripción de la prueba oral. Por su parte, el 17 de abril de 2026, el Municipio de Ponce presentó *"Alegato Suplementario"* y el 27 de mayo de 2026, la apelada presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, procedemos a esbozar el marco legal aplicable al caso ante nuestra consideración.

**II.**

**A. Acción sobre Cobro de Dinero y deuda líquida, exigible y vencida:**

Una parte reclamante tiene la posibilidad de instar una causa de acción sobre cobro de dinero al amparo del trámite sumario estatuido en la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60. El proceso expedito contemplado por la precitada Regla lleva como norte el "agilizar y simplificar los procedimientos en acciones de reclamaciones de cuantías pequeñas, para así lograr la facilitación del acceso a los tribunales y una justicia más rápida, justa y económica en este tipo de reclamación". *Cooperativa v. Hernández Hernández,* 205 DPR 624, 631 (2020).

Ahora bien, el referido trámite sumario puede ser convertido a un litigio de naturaleza ordinaria si ocurre alguna de las siguientes instancias: (1) si la parte demandada demuestra que tiene una reclamación sustancial; (2) cuando, en el interés de la justicia, las partes ejercen su derecho de solicitar que el pleito se continúe ventilando por el trámite civil ordinario; (3) partiendo de ese mismo interés, el tribunal *motu proprio* tiene la discreción para así ordenarlo, y (4) cuando la parte demandante no conoce ni provee el nombre y la dirección del deudor. *Cooperativa v. Hernández Hernández,* supra, pág. 637-638.

De otra parte, es reconocido que solamente se pueden reclamar por vía judicial las deudas vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi,* 208 DPR 100, 108 (2021). Nuestra jurisprudencia ha definido la palabra "líquida" como "el saldo o residuo de cuantía cierta que resulta de la comparación del cargo con la data." *Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950). Entiéndase por esto, que una deuda es líquida por ser cierta y determinada. *RMCA v. Mayol Bianchi,* supra, pág. 108. Por su parte, mediante el vocablo "exigible," con relación a una acreencia, se hace referencia a una obligación de la que se puede demandar su cumplimiento. *Id,* pág. 108-109. "Por consiguiente, al alegarse que la cuenta es 'líquida y exigible' se están exponi[e]ndo hechos, a saber: que el residuo de la cuenta ha sido aceptado como correcto por el deudor y que está vencido." *Id.*

**B.      Pago de lo Indebido:**

Nuestro Código Civil vigente establece el derecho a restitución en los escenarios en que una persona realice un pago indebido. En específico, el Artículo 1520 del Código Civil de 2020 lee como sigue: "Quien, sin causa jurídica, ha hecho el pago de una cosa o cantidad que no debía, tiene derecho a exigir su restitución de quien lo recibió. La restitución del pago no está sujeta a que se haya efectuado con error." 31 LPRA sec. 10751. Según lo dispuesto en los Artículos 1522 y 1523 del mismo Código una persona puede recibir un pago de buena y de mala fe. Quien "de buena fe ha aceptado un pago indebido de cosa cierta y determinada solo responde de las desmejoras o pérdidas de esta y de sus accesiones, en cuanto se haya enriquecido por ellas." 31 LPRA sec. 10754. En los casos en que haya mediado mala fe, la parte aceptante del pago deberá abonar el interés legal o los frutos naturales percibidos y responde por los menoscabos y perjuicios sufridos. 31 LPRA sec. 10753.

Ahora bien, la restitución del pago indebido no se efectúa en el vacío. Para que se configure la referida doctrina deben concurrir los siguientes requisitos: (1) que se produzca un pago con la intención de

extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, que no exista obligación jurídica entre el que paga y el que cobra, o si la obligación existe, que sea por una cuantía menor a la pagada, y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto. Véase, *E.L.A. v. Crespo Torres*, 180 DPR 776, 793-794 (2011).

**C.      Licencias al amparo del Código Municipal:**

El Código Municipal de Puerto Rico dispone que los empleados municipales tendrán derecho a los beneficios marginales que establece el propio Código Municipal y las otras leyes especiales. 21 LPRA sec. 7246. En lo atinente a las licencias por vacaciones, el Artículo 2.058 del Código Municipal lee como sigue:

> *Licencia de Vacaciones* — Los empleados de carrera, de confianza y transitorios tendrán derecho a acumular licencia de vacaciones, a razón de dos días y medio (2½) por cada mes de servicio. Los empleados a jornada parcial acumularán dicha licencia en forma proporcional al número de horas en que presten servicios regularmente.
>
> La licencia de vacaciones se concede al empleado para proporcionarle un periodo de descanso anual. Como norma general, deberá ser disfrutada durante el año natural en que fue acumulada. Cada dependencia municipal viene obligada a formular un plan de vacaciones, por cada año natural, en coordinación con los supervisores y los empleados, que establezca el periodo dentro del cual cada empleado disfrutará de sus vacaciones, en la forma más compatible con las necesidades de servicio. Dicho plan deberá establecerse no más tarde del 31 de diciembre de cada año para que entre en vigor el primero de enero de cada año siguiente. Será responsabilidad de cada municipio y de todos los empleados dar cumplimiento estricto al referido plan. Solo podrá hacerse excepción por necesidad clara e inaplazable del servicio, debidamente certificada.
>
> Cada organismo municipal deberá preparar y administrar un plan de vacaciones en la forma más compatible posible con las exigencias del servicio y que evite que los empleados acumulen licencia en exceso del máximo permisible al finalizar año natural.
>
> Todo empleado podrá acumular vacaciones hasta un máximo de sesenta (60) días laborables al finalizar cada año natural. Si por necesidad del servicio, evidenciada de forma escrita y a requerimiento de la autoridad nominadora, el empleado no puede disfrutar de la licencia acumulada, la autoridad nominadora municipal le deberá conceder cualquier exceso del límite de sesenta (60) días dentro de los primeros seis (6) meses del siguiente año natural. La autoridad nominadora deberá tomar las medidas necesarias para conceder el disfrute de vacaciones al empleado siempre que sea posible. El Alcalde adoptará, a través de la Oficina de Recursos Humanos del municipio, las normas que regirán cuando sea la necesidad de anticipar licencia de vacaciones a empleados.

Cuando las circunstancias y méritos del caso lo justifiquen, se podrá autorizar a cualquier empleado a utilizar las vacaciones acumuladas por un período mayor de treinta (30) días y hasta un máximo de sesenta (60) en cualquier año natural.

Siempre que la situación fiscal lo permita, se faculta a los organismos municipales a pagar al empleado vacaciones acumuladas en el año natural en exceso del límite máximo autorizado por ley, vía excepción, cuando por circunstancias extraordinarias del servicio ajenas a su voluntad, el empleado no ha podido disfrutar la misma durante los seis (6) meses siguientes al año natural que refleja el exceso. De acontecer dicha situación, el empleado podrá optar por autorizar al organismo municipal concernido a transferir al Departamento de Hacienda cualquier cantidad monetaria por concepto del balance de licencia de vacaciones acumuladas en el año natural en exceso del límite máximo autorizado por ley, a fin de que se acredite la misma como pago completo o parcial de cualquier deuda por concepto de contribuciones sobre ingreso que tuviere al momento de autorizar la transferencia.

En lo concerniente a los Alcaldes, se tendrá que liquidar el exceso por concepto de licencia por vacaciones, cada año, en específico, el 30 de junio del siguiente año natural. De no realizarse dicha liquidación, dichos excesos quedan sin efecto. 21 LPRA sec. 7247.

**D.     Apreciación de la Prueba:**

En materia de prueba testimonial, "[h]emos expresado que la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada." *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022). A tono de ello, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Así pues, es usual que no intervengamos, ni alteraremos innecesariamente las determinaciones de hecho formuladas por el tribunal de primera instancia luego de que se admita y aquilate la prueba presentada durante el juicio. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009). Es decir, no podemos "descartar y sustituir las determinaciones tajantes y ponderadas del foro de instancia" por nuestra propia apreciación, a base de un examen del expediente del caso. *Id.*, págs. 65-66.

Es bien sabido que nos corresponde brindarle deferencia al foro primario salvo que exista un error manifiesto o que el tribunal

sentenciador haya actuado movido por prejuicio, parcialidad o pasión. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 987 (2010). Mediante esta norma de deferencia, se impone respeto a la evaluación que hace el tribunal de instancia al aquilatar la credibilidad de un testigo pues es dicho foro quien está en mejor posición para hacerlo. *Id.* Los foros apelativos sólo tenemos ante nos expedientes "mudos e inexpresivos". *Id.* Es el foro primario quien tiene la oportunidad de escuchar a los testigos mientras declaran y así puede apreciar su "*demeanor*". *Colón v. Lotería*, 167 DPR 625, 659 (2006). Es dicho foro quien debe adjudicar los conflictos de prueba. *S. L. G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009).

Ahora bien, esta norma no es absoluta pues procederá nuestra intervención con dicha valoración si una evaluación de la totalidad de la prueba testifical nos provoca tal insatisfacción o intranquilidad de conciencia que perturbe nuestro sentido básico de justicia. *Santiago Maldonado v. Alvelo Rivera*, 2026 TSPR 14; *S. L. G. Rivera Carrasquillo v. A.A.A.*, supra, pág. 356. La parte apelante que interese su revocación es quien tiene que señalar y demostrar el fundamento para ello. *Id.* Es decir, tiene el deber de demostrar el error manifiesto o fundamentar que existió pasión, prejuicio o parcialidad. *Id.* El foro apelativo intervendrá en el asunto que se trate si la apreciación de la prueba realizada por el foro primario no concuerda con la realidad fáctica o "es inherentemente imposible o increíble". *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002).

Será también meritoria nuestra intervención en casos en los que la apreciación de la prueba del foro primario no represente "el balance más racional, justiciero y jurídico de la totalidad de la prueba". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Miranda Cruz y otros v. S.L.G. Ritch*, 176 DPR 951, 974 (2009). El tribunal de primera instancia se excederá en el ejercicio de su discreción si, al apreciar la prueba, infundadamente le asigna gran valor a un hecho irrelevante e inmaterial, y basa su determinación exclusivamente en éste; o si injustificadamente pasa por alto un hecho material significativo que no debió ignorar; o si,

aun considerando todos los hechos materiales y descartando todos los irrelevantes, los sopesa y calibra de forma liviana. *García v. Asociación*, 165 DPR 311, 321-322 (2005).

**III.**

El Municipio de Ponce sostiene que la *"Sentencia"* emitida por el foro primario se distancia de la prueba testifical y documental que desfiló en el juicio y de la prueba que fue estipulada por las partes. Es su postura, que la deuda reclamada es una líquida, vencida y exigible toda vez que logró demostrar que se generó una obligación pecuniaria la cual fue computada y exigida. Al respecto, detalla que surge de sus cálculos que se había emitido un pago de menos a favor de la apelada por la cantidad de $2,185.80. Ante ello, asevera que dicha cantidad fue acreditada a la deuda de la apelada y que la referida parte le debe una suma ascendente a $11,432.33 de los $13,618.13 que le fueron desembolsados por error, en concepto de exceso de licencia por vacaciones. De otra parte, arguye que el tribunal de instancia incidió al tomar conocimiento judicial de unos hechos impertinentes. Además, asevera, que un pago de exceso de vaciones solo procede si existe una justificación de necesidad de servicio y que ello no surge del expediente personal de la apelada. En cuanto a su último señalamiento de error, sostiene que no se presentó evidencia relativa a que se notificó a la Secretaría de la Legislatura Municipal sobre la designación de la señora Yolanda Cruz como alcaldesa interina. Por consiguiente, entiende que la referida señora no poseía la facultad en ley para ser considerada "autoridad nominadora."

Por su parte, la apelada arguye que el Municipio de Ponce no logró demostrar cuántos días se pagaron en exceso por concepto de vacaciones. Sobre el particular, alega que dicho Municipio no depuró la cantidad de $11,258.55. De otra parte, concibe que no existe una exigencia de que ella, como parte demandada, debía presentar evidencia

a su favor cuando jurídicamente el peso de la prueba recae sobre la parte reclamante.

Luego de un examen detallado de la totalidad del expediente ante nuestra consideración, en conjunto con la trascripción de la prueba oral, concluimos confirmar el dictamen recurrido. Nos explicamos.

Surge del expuesto trámite procesal, que este caso comenzó a dilucidarse a tenor del procedimiento sumario estatuido en la Regla 60 de Procedimiento Civil, *supra*. No obstante, en la etapa inicial del litigio el foro primario determinó convertir el proceso expedito a uno de tramitación ordinaria. Las razones que le llevaron a ello fueron precisamente la falta de liquidez de la deuda que el Municipio de Ponce le reclama a la apelada. Surge de la *"Minuta"* notificada el 17 de agosto de 2023, que la representación legal de la apelada argumentó, que a su representada no se le había entregado un desglose del pago exigido. Por su parte, el Municipio de Ponce, por conducto de su abogada, mantuvo su postura del aducido pago indebido, pero se allanó a la conversión de los procesos ante la alegada falta de liquidez de la deuda.

Ante este escenario, el Municipio de Ponce tuvo la oportunidad de probar su causa de acción en virtud de las garantías procesales que distinguen a los pleitos de tramitación ordinaria. Siendo así, tuvo ante su disposición la celebración de un descubrimiento de prueba y el derecho de ventilar sus reclamos en la celebración de la vista en su fondo. Es importante puntualizar que, como parte demandante, el Municipio de Ponce tenía el peso de la prueba para demostrar su causa de acción. Véase, Regla 110 de las Reglas de Evidencia, según enmendadas, 32 LPRA Ap. VI, R. 110. En ese sentido, no solo debía probar los requisitos doctrinales de un pago indebido, sino también tenía que demostrar que la deuda reclamada era una líquida, vencida y exigible. La razón de ello estriba en que nuestro ordenamiento jurídico no permite cobrar sumas de dinero cuando se desconoce cuánto es lo que se debe.

En vista de lo anterior, el Municipio de Ponce debía probar que la exigida acreencia es cierta en comparación con la data. Para el logro de ello, no podía utilizar cuantías meramente globales y sí exponer cantidades desglosadas en detalle: con el número total de las vacaciones excedentes que en efecto le fueron pagadas a la apelada; junto al cálculo legítimo para llegar a la cuantía total desembolsada y exigida; y en unión al número de días en exceso por vacaciones que equivale a los $11,258.55, reclamados en la *"Demanda"* y expuestos en facturas y en cartas de cobro de dinero.[4] De igual modo, el cobro peticionado debía ser específico e individualizado de lo pagado en concepto de licencia por vacaciones no excedentes y de licencia por enfermedad, lo cual no estaba en controversia.

La prueba testimonial desfilada en juicio corroboró la inexistencia de una cuantía adeudada cierta y determinada. Durante la celebración de la vista en su fondo, el Municipio de Ponce presentó testimonios relacionados a las labores administrativas y de auditoría que se llevan a cabo en el referido Municipio. No obstante, los testimonios no pudieron establecer con certeza la cuantía que legítimamente es reclamable. En estos momentos se hace meritorio mencionar algunos de los dichos de los referidos testimonios. Particularmente, la señora Vargas de León, quien fue Auditora Interna y gerente administrativa del Municipio, expuso, que a la apelada se le pagó en exceso la cantidad de **$11,258.55**. Asimismo, expresó que no podía decir en detalle la cantidad de días acumulados que le fueron pagados a la apelada.[5] Por su parte, el señor Vargas Esbri, quien se desempeñaba como Auditor III del Municipio de Ponce, indicó que se computó que la apelada adeudaba la suma de

---

[4] Nótese, que hay contradicción en la prueba presentada, puesto que existe documentación en la que se solicita la cuantía de **$11,258.55** y documentos y testimonios adicionales en los que se requiere el pago de **$11,432.33.** Véase, Exhibit #3 de la Entrada Núm. 75 de SUMAC del TPI. Además, obsérvese el testimonio del señor Juan C. Vargas, Auditor III del Municipio de Ponce, pág. 87-88 y 98 de la *"Transcripción de Vista,"* Ajeno 1 de la Entrada Núm. 11 de SUMAC del TA. A su vez, en la propia *"Apelación"* el Municipio de Ponce solicita la restitución de la cantidad de **$11,432.33**.

[5] Véase, la *"Transcripción de Vista,"* Ajeno 1 de la Entrada Núm. 11 de SUMAC del TA, págs. 56-57; 78 y 84.

**$11,432.33**. A su vez, estableció que no se había calculado la cantidad de días en exceso que se le pagaron a la apelada.[6] Asimismo, la señora Cartagena Fuentes, quien fuera Auditora IV del Municipio de Ponce, aseveró que no se recuerda del número de días en exceso que equivale la cantidad reclamada.[7] De igual manera, la señora Reyes Vargas, quien se desempeñó como Asistente V de Recursos Humanos del Municipio de Ponce, expresó que no recuerda la cantidad de días de vacaciones por exceso que se le están reclamando a la apelada.[8]

Ante lo expuesto, no estamos ante un escenario en que el Municipio de Ponce haya logrado establecer la cantidad exacta que se debe. Tampoco, ninguna de las totalidades requeridas ha sido aceptada por la apelada. Por consiguiente, la deuda en controversia no es líquida.

Por otro lado, el Municipio de Ponce levanta planteamientos relacionados a la negativa de la apelada de utilizar su turno de presentación de prueba durante la celebración del juicio. De igual modo, expone alegaciones relativas a la impertinencia de ciertos hechos de los que se tomó conocimiento judicial. A su vez, argumenta sobre la falta de autoridad de la Alcaldesa interina del Municipio al momento en que ocurrieron los presentes hechos. Además, arguye sobre la necesidad de emitir determinaciones de hechos adicionales. Razonamos, que tras superar el análisis de la falta de liquidez de la deuda no se hace necesario discutir de manera individualizada el resto de los planteamientos esgrimidos. Ello, dado que la cuestión umbral de esta controversia es la no liquidez de la deuda exigida. Al Municipio no lograr demostrar la existencia de una deuda liquida, la conclusión necesaria es declarar *No Ha Lugar* el cobro exigido, puesto que cuando se reclaman

---

[6] Véase, la *"Transcripción de Vista,"* Ajeno 1 de la Entrada Núm. 11 de SUMAC del TA, págs. 87-88; 98; y 101.

[7] Véase, la *"Transcripción de Vista,"* Ajeno 1 de la Entrada Núm. 11 de SUMAC del TA, pág. 124 y 149.

[8] Véase, la *"Transcripción de Vista,"* Ajeno 1 de la Entrada Núm. 11 de SUMAC del TA, pág. 160 y 174.

unas cuantías inciertas e indeterminadas deja de ser certero, justo y legítimo el exigir su pago.

No obstante, de forma general, cabe puntualizar que la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende de la exposición de los jueces del Tribunal de Primera Instancia a la prueba oral presentada ante sí. Ante ello, declinamos intervenir con las determinaciones de hechos ponderadas y acogidas por el foro primario. Su sano juicio y apreciación contribuyeron a decidir sobre las determinaciones de hechos pertinentes, sobre la veracidad del interinato en cuestión; y sobre los hechos de entendimiento general de los que tomó conocimiento judicial. Por lo tanto, en esas cuestiones brindamos deferencia al tribunal recurrido por no lograr demostrarse que medió, prejuicio, parcialidad o error manifiesto en sus apreciaciones.

**IV.**

Por los fundamentos expuestos, *confirmamos* la *"Sentencia"* objeto de revisión.

**Notifíquese.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones